Our next case is number 16-1859, again HTC Corporation v. Cellular Communications Equipment. Mr. Moore. Good morning, Your Honors. If it pleases the Court, we believe the Board made about four different errors in this case. First of all, the Board overlooked the explicit teachings of the Home Network Preference Limitation in Lawrence. In the Board's construction of the term Home Network, it explicitly construed it, but then in its application it imported additional limitations, giving us a false implicit construction of Home Network. The Board also erred in its overlooking of the explicit evidence of the Home Network Preference Limitation in SUSUDA. And lastly, we believe that when the Board reached the inherency analysis that it undertook, its analysis was fatally flawed. So, turning specifically to the teachings of Lawrence, instead of applying the teachings of Lawrence at line 3, 23-20... Can I just double check one thing? Is there a place in the Board's... You have a subheading about teaching away. Is there a place in the Board's opinion that uses the language of teaching away? Their analysis kind of indicated that they were applying a teaching away theory that was brought up by the patent owner. And our only position with respect to that is teaching away is completely inappropriate in an anticipation regime. So, to my mind, the most responsive words in your answer were, kind of indicates. Does that mean the answer to my question is no, there is no language in the Board's opinion that uses the language of teaching away? There is not, Your Honor. Okay. Specifically, the teachings of Lawrence, column 3, lines 23-29, which can be found in appendix 21. The Board states that they explicitly declined to take judicial notice that every working cell phone has a home network that it gives preference to. They based this analysis on the analysis they'd done with respect to Susuta. That completely ignores the teachings of Lawrence that say, alternatively, if the wireless communicator is already registered onto the appropriate network, the wireless communicator simply conducts communication with the network so that the desired service feature is provided to the user. You can find that in appendix 768. So we believe that the application of inherency when there's an explicit teaching was inappropriate. Now, with the construction issue, the Board explicitly construed the home network as being the network that the mobile communicator is subscribed to. And we take no issue with that construction. In fact, we believe it to be appropriate. In doing so, the Board explicitly rejected the patent donor's analysis that would require additional limitations of being pre-configured or any other additional limitations into that claim, into that claim term. Unfortunately, when they went to application of it, they did that exactly. They imported additional limitations with respect to Lawrence. So you're suggesting that they imported a pre-configured limitation? Well, at the hearing, they asked my colleague, Mr. Phil, whether or not it was pre-configured. And in the Lawrence reference, it is. But what they also imported was a preference for how that channel is chosen. I thought that was, I'm a little confused here. I thought that in the art, that a home network was a network where it was pre-configured to use it. Isn't that the case? I mean, it doesn't seem to me that, well, no, just in the art generally. And in Lawrence itself, in the background section where it describes home network. I mean, isn't that just generally part of what a home network is, that it's pre-configured to use that network? In certain instances, it is. But we believe it inappropriate to limit this claim construction to that instance because the applicant was their own lexicographer. And the board specifically adopted the language that the applicant had used in the patent that made no mention of further limitation. They clearly defined exactly what they meant by home network, and the board adopted it. Now, when they applied it, they imported additional limitations. With respect to Lawrence, they said... I mean, that sounds to me as though they just elaborated on the claim construction when they applied it and said that home network has a pre-configured aspect to it. Well, that's not really what they're saying. They're saying that Lawrence specifically did nothing... Let's assume for the moment that home network does have a pre-configured requirement. Where are we with respect to Lawrence if we interpret it that way? If it's interpreted that way, Lawrence absolutely provides it. Susuta may not. But the claim construction that was adopted by the board requires nothing more than the mobile unit be subscribed to that network for it to be the home network. Nothing more, nothing less. If your handset is logged into that network, that is your home network. And to import additional limitations of some sort of algorithm with respect to how that network is chosen, which you can see at appendix page 20 with respect to Lawrence or appendix page 15 when they're talking about Susuta, they say these portions of Susuta don't describe a home network or any other type of network that's selected first among those of the catalog. To the contrary, the language corresponding with Fig. 3 describes communicator unit 1001 choosing service provider 103 for its telephone interconnection service without any further explanation. So in other words, the board is specifically looking for an additional algorithm that they explicitly excluded from the claim construction. Now, when they are applying the claim construction, they import this notion of additional limitations. And that's why we believe it to be a claim construction issue. Let's assume that that pre-configured limitation exists as part of the claim construction. Let's assume that. Talk to us about Lawrence and tell us why Lawrence nonetheless anticipates. With respect to Lawrence, the hands... What page is Lawrence at? The Lawrence reference, I believe, is at appendix 767 through... I don't know exactly where. The way Lawrence works is the handset has something called a NAM, which is the address module inside of the handset. But, I mean, in Lawrence, on column 1146, it talks about a SID, which uniquely identifies a particular wireless signal, which is primarily intended to provide... That's right. ...airtime, so that's pre-configured, right? Absolutely, Your Honor, and that's why my colleague, Mr. Thill, when he was asked, is Lawrence pre-configured, he answered in the affirmative. Pre-configured to do what? Maybe I'm misremembering, but what I'm remembering, and correct me if I'm wrong, is that the essence of the Board's conclusion or finding about why Lawrence doesn't meet the claim limitation is that while Lawrence talks about a home network, it does not inherently require, and I think you've just confirmed this, and it doesn't expressly say that you check the home network first. Your Honor, it does. If we go to Lawrence at column 3, lines 23 through 29, specifically beginning at 26, it says, alternatively, if the wireless communicator is already registered onto the appropriate network, the wireless communicator simply conducts communication with the network so that the desired service feature is provided to the user. Now, that's an explicit teaching of the preference. So don't go to any other network or service provider if the feature that you're looking for is found where you currently are. And that's the explicit teaching that was overlooked in Lawrence. The Board, during the discussion of Susuto, overlooked the explicit record and moved on. The sentence you just read, why is that referring to the home network? The claim says always check the home network, which I take it to mean even if you're away from your home network and are registered while being away on, let's call it a roaming network, that you still, under this claim, have to check the home network first. I take this sentence to refer to check whatever network you happen to be registered on, which might be, you know, the one in France instead of D.C. Two issues there, Your Honor. I think a reading that would require an absolute checking of the home network would be completely inappropriate because instances where I am in China, it doesn't check with AT&T first. It can't. So the claim does require a preference be given to the home network. And when the communicator is on the home network, this passage illustrates that it will check that network first prior to any other. I share Judge Toronto's view here. When I'm looking at the claim that you pointed out to, it doesn't say the appropriate network. It doesn't limit that to a home network. An appropriate network seems to me it can be something, whatever you want to register to. And under the board's construction that merely being logged onto the network makes it your home network. Under that construction, the appropriate network is the one that you're logged onto. I.e., the home network. If I can move on to Susuta for just a few moments. The difficulty that we have with Susuta is the board's construction of home network is the network to which a mobile station subscribes. So to use your example, that's not China. When I'm in China, my handset subscribes to China MobileCom. It does. It logs on. My handset cannot reach an AT&T network from Shenzhen. When you're in China, you select the network, right? My handset selects a network. I can set it to automatic or manual, but my handset does log on to a network in China. And when it does, under the board's construction, that is my home network. Now, moving briefly on to Susuta, if I might. The difficulty that we have with Susuta is this. The board lifted a passage from the hearing where my colleague, Mr. Thill, stated that the issues of the teachings of Susuta and the home network preference limitation were not in the petition and not in the expert declaration. And they accurately quoted that particular passage from the hearing, but it was taken dramatically out of context. Within just a few additional lines, my colleague says, but this was addressed during the cross-examination. And our point is just this. If our colleagues that represent the patent owner had limited their cross-examination to Dr. Williams' direct testimony at his deposition, we wouldn't be having this conversation. But they opened the door. They opened the door and started questioning Dr. Williams about the teachings of Susuta. And in great detail, Dr. Williams opined about home networks, home network limitations, in such great detail that their expert had to rebut this in his declaration, which you can see at Joint Appendix 2040 and 41. Some of Dr. Williams' testimony can be found at 1892 and 1978 as well. And what does Susuta teach? Susuta teaches, again, a very elaborate set of embodiments, some of which teach exactly this home network preference limitation. Now, what is the home network in Susuta? Again, we have to get back to the original claim construction. The original claim construction says the home network is the network that you're subscribed to. Once we have that claim construction, then the teachings of Susuta that are in evidence clearly illustrate that Susuta anticipates. The difficulty that we have here is the board has made a couple of different leaps of faith, so to speak. Number one, it ignored the explicit teachings of Lawrence and the explicit evidence in the record of Susuta. The board explicitly gave us a claim construction with respect to home network and then in application imported a lot of additional limitations into home network. A lot of additional limitations? I thought you were just talking about the pre-configured. Pre-configured or they're asking for some other additional algorithm. They say it doesn't illustrate how. Now, that could be pre-configured or it could be any other additional algorithm that they're looking for. So we believe that to be an error. But if we take it all the way down to the board's inherency argument, we believe that argument to be fatally flawed as well. And here's the reason. My cell phone, I use a ZTE Axon phone, and it's a pretty nice phone. But it has a slot right along the side where I can take the SIM card out. And I would just invite the court to remove the SIM card from your mobile phone and then try to make a phone call or log on to the network. The problem is the SIM card has your phone number. The SIM card has your authentication information. The SIM card in my phone is how my wife and daughter know how to call me, and the phone call doesn't reroute to someone else. Without that SIM card, you're not logged on to the network. Okay, Mr. Moore, I think we're about out of time. We'll give you two minutes for a bottle. Thank you, Your Honor. Mr. Granahan? Good morning, Your Honors. May it please the court, Chris Granahan, on behalf of the Appellee Cellular Communications Equipment. The court should affirm the Board's final written decision because substantial evidence supports the Board's findings that neither Lawrence nor Susita. Did Lawrence disclose a home network? Your Honor, the Board found that Lawrence, in the background of the intervention, discloses a home network. We have not argued on appeal that that finding was not supported by substantial evidence. So why isn't, given that concession, why isn't Lawrence in Column 3 when it's talking about roaming for service talking about a home network embodiment of roams for service? Well, Your Honor, if you look at the background of the intervention in Lawrence, what it describes is that the mobile device knows whether it's in a home network by the SID that's stored in its number assignment module. If you don't have a number assignment module, there's really no home network because there's no way for the device to know whether it's in its home network. The detailed description of the intervention, which the appellants have pointed to, is describing this process by which you look to the first network, determine whether it provides the service that you're looking for, and then look to the second network, says nothing about a number assignment module. All it says is that this control channel broadcasts a system identification number, which is just that. It's an identification number that identifies the network. There's no disclosure of a NAM that would allow the device to determine whether it's in its home network. So that's why we think that Lawrence doesn't disclose it. I'm not sure that I understand that. I mean, here we have in column 1, it describes a home network, talks about a system identification number, and then in column 3, again, it's talking about a system identification number, and it's talking about roaming for service, right? Correct. So why isn't that a description of a phone that has a home network and then is roaming for service? What am I missing? Sorry, go ahead. What am I missing? Well, Your Honor, the background describes that full sentence that you're pulling the system identification number from in the background of the intervention. It says a NAM is a memory location within the wireless communicator in which an installer technician stores an assigned telephone number and a system identification number which uniquely identifies a particular wireless network, which is primarily intended to provide airtime service for that communicator. So it is the system identification number within the NAM that identifies the home network. There is nothing in column 3 that refers to a system identification number stored in the NAM. And, Your Honor, I said a second ago that, yes, column 3 does describe roaming for service. I should qualify that a bit. If you mean roaming in the sense that there's necessarily a home network and by roaming we mean we're looking outside the home network, no, we don't believe that column 3 describes roaming for service. By roaming for service, you just mean it looks to different networks to see which one provides the desired service. In that sense, it does describe roaming for service. Does that answer Your Honor's question? I'm not sure, but go ahead. Okay. I do want to... Can I just see if I understand? Column 1 describes two things, something that tells you what the home network is, that's the NAM, and a system identification number maybe that's connected with that. But you can have a system identification, is it a D or a NAM? System identification, what's the SID? SID, I believe ID is just identification. System identification number without the NAM. Correct. And column 3 is talking about system identification numbers generally, not for the specific instance where there is one connected with a NAM. Correct. That's what I understand the board to be saying. Yes, it mentions a NAM-type SID, to start using awful acronyms, but the description in column 3 of choosing networks is about SIDs that are not necessarily connected to a NAM. That's correct, Your Honor, and that is our argument. The SID is what identifies a network. If the presence of an SID in and of itself meant that whatever network was broadcasting the SID was a home network, there would be no reason for the NAM. The mobile device would receive an SID and say that's my home network, but that is not what the background of the invention discloses. The SID in column 3 is separate and apart from the NAM. It's just identifying the network. At the very least, we believe this is a permissible reading of Lawrence, and the standard review here is substantial evidence. What about the sentence beginning at line 26 in column 3? So this, Your Honor, two things with respect to this. First, this sentence was never pointed out by the appellants before the board. I don't believe it showed up in this court until we— That happens all the time, and it's not a waiver. Well, Your Honor— It's the same argument. People just look at different parts of the specification when they get on appeal. Sure. Well, even putting the waiver argument aside, there is nothing in those three lines that we believe says anything about home network. It says if the wireless communicator is already registered onto the appropriate network, then the wireless communicator simply conducts communications with the network so that the desired service feature— Give us an example of a situation where you have an appropriate network, have a device registered to the appropriate network, and it's not the home network. Sure, and there was no expert testimony on this issue, so I'm just— Well, you argued on it. Correct. So, I mean, one example could be it was registered with a network for the same service before. It never deregistered, and so it's still registered with that network. It's not the home network. Then does that become the home network? I don't think so, Your Honor. Give me another example. Is the China example an example of that or not? So as I understand the China example, let me just clarify your question. Right, so I live in D.C., and my home network is whatever my local cellular network is in D.C. I go to China. I've never had any economic relationship whatsoever with whatever the Chinese cell phone company is, but my phone finds it and uses it. Now, it seems to me a little odd to call that a network to which I am subscribing, which is the definition of the home network. But if I'm there and I'm registered because my phone is programmed to register me for the China network, this is what I think is the example that was talked about earlier, that this sentence says, if you're already registered for it, check it first. It seems to me the question is if that sentence applies to that and the Chinese network is not my home network, then that's an example. Is that what we're talking about? I would agree that that's an example. Why is it the Chinese network you subscribe to become the home network when you're in China? I guess it depends on what we mean by subscribe, and I don't think that's been fully fleshed out in the record. If we talk about how we normally use cell phones, a subscription is whichever carrier you pay your monthly fee to to provide you normal service when you're at home. I don't think that definition would apply if you're in China on some network that you've never been for. I mean, was the question of the meaning or scope of subscribe in the definition of home network the subject of expert or other evidence? It was not, Your Honor. If I may just move quickly to the argument that the board somehow imported some other limitations into its construction of home network. I don't think that's what it was doing. I think it was just applying the plain language of the claims, and Claim 1 appears on, it's in a Certificate of Correction. It's at page 1136 of the appendix, or at least part of Claim 1 is. This idea that the mobile device first has to look to the home network, and then if the home network does not provide the desired service, it looks to other networks, I think is plain from the claim. It requires choosing a desired service to be requested, determining if the desired service belongs to said first set, and then if the desired service belongs to the first set, registering with the first network, and if it doesn't, then you proceed and look at the second network and register with the second network. So I don't think the board was importing limitations into the definition of home network. I think it was just applying the plain language of the claims. Let me move briefly to SESUDA. As I understood from the briefing, the only argument that was being made on appeal with respect to SESUDA was that the board legally erred by rejecting this argument that SESUDA does not disclose that the first network is the home network because it wasn't required to enable SESUDA. While it is true that the case law does state that a specification does not need to describe what is well known in the art to be enabling, that doesn't displace petitioner's burden to point to something in the record to show that every single limitation of the challenge claims are described either explicitly or implicitly. The board held that the board found that petitioner had not met its burden here, and indeed the appellants admitted that they didn't have any evidence on this point at the oral argument. That is at page 577 of the appendix. If I may have one moment to make sure I've covered everything that I wanted to cover. One point with respect to the teaching away argument, Judge Toronto, I believe it was you that recognized that the board never used the words teaching away. Below, when we talked about teaching away, we weren't relying on teaching away as a stand-alone argument for why Lawrence does not anticipate. It was just a, we believe that Lawrence teaches away that explains why Lawrence does not disclose that the first network is the home network, and regardless, the board did not ever rely on any teaching away argument. You used the words teaching away before. We did use the words teaching away below, that's correct, Your Honor. If the board has no further questions, I'll see the remainder of my time. Court. Did I say board? I'm sorry, court. I've done that over and over. Thank you, Mr. Brennan. Your Honor, just a couple of points that I think need to be addressed here. First, the assertion that we had admitted during oral argument, a lack of evidence, is completely unsupported by the record. That was lifted out of context by the board. The discussion in Dr. Williams' cross-examination is very thorough as to how a home network is selected and the specific preferences given to it. Our position here is the board ignored that discussion in favor of moving into a form of analysis based on inherency, and then misapplying those teachings or that analysis, not just on Susuta, but back over to Lawrence. Again, we believe that they've completely missed the mark with respect to the explicit teachings and the explicit evidence. One other thing that came up during the oral argument here, and that's the concept of subscription. What exactly is required under subscription? First of all, it never was construed below. Unfortunately, when the board's explicit construction of the network that the mobile unit is subscribed to, that imports something into the claim that needs further explanation. Then again, that's why that issue of what actually is required is a claim construction issue. But looking specifically at appropriate, I believe you've appropriately raised the term appropriate, because in that context, the question becomes what is the... In a way, this seems to me the reverse of the first case this morning. In the first case, your client, I think in the brief, was making only a claim construction argument. In this case, at least according to the headings, you're making no claim construction argument at all. It's pure application. Application to Lawrence, application to Susuta. Yes, Your Honor. We believe there to be two levels to this argument. The first one is claim construction. Was it proper to import these additional limitations and create an implicit construction once an explicit one had been given? And then the two application arguments. But looking specifically at appropriate, I'd like to address that just momentarily. I'm sorry. Where in either the headings or the issues presented, is there anything about claim construction? We are raising a claim construction argument. I don't think it's in here. Those words are not specifically used. The thrust of our argument is twofold, like I've mentioned, and the first being that by implicitly importing additional requirements, that gave us a claim construction in opposite to the actual claim construction that was given, which we believe the explicit claim construction to be appropriate. Back to the notion of a... I think we're out of time with other questions. Yeah, let me just ask real quick. It seems that perhaps there wasn't any claim construction because during oral argument you admitted that the home network preference limitation is not explicitly taught by norms, but it's only implied. So your arguments were legal, not claim construction. Your Honor, I... And you're not... I understand you to now argue that you didn't make that concession. That concession was taken out of context because it wasn't in the petition. It wasn't in the declaration. The discussion of Susuda was... But you did argue that Lawrence was implicit. The board completely hijacked the conversation from the explicit teachings of Lawrence. Once they had determined that Susuda had a problem, they applied the Susuda analysis back to Lawrence and questioned Mr. Thill accordingly. He answered within the scope of their questioning. But nothing in that discussion... I'm not following this. What are you saying? The board specifically found that Lawrence in column one disclosed the home network. Yes. And preconfigured. Absolutely. So what's your point? My point is they overlooked the explicit teachings in column three, which give the appropriate network a preference. Now, the term appropriate has obviously two embodiments. Either it is the home network or it isn't. To exclude one of those two embodiments by saying nothing here says that it is one of those two embodiments is inappropriate. Just common sense. It either is your home network or it's not. Under this construction, it is because you're logged on to it. But nothing in the patent or in any of the record would require excluding the other embodiment. Okay. Thank you, Mr. Moore. Thank you. Thank you.